# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

Octavio ABAD-Sanchez (1),
Arturo ADAILE-Sanchez (2),
Alicia BASURTO-Basurto (3),
Jesus Antonio IGNACIO-Hernandez (4),
Alpaslan KARADEMIR (5),
Josue LOPEZ-Miguel (6),
Olga Lidia MIJANGOS-Perez (7),
Rocelia MONTIEL-Marin (8),
Sandra MORALES-Escobar (9),
Rogelio AGUILAR-Aguilar (10),
Arturo CRUZ-Fructuoso (11),
Jairo Rogelio HERNANDEZ-Cervantes (12),
Federico SANTOS-Gonzalez (13),
Jose Francisco NAJERA-Moran (14),
Leobardo Genaro FRUCTUOSO-Hernandez (15),

Defendants.

Case No. 2:26-mj-8864

<u>COMPLAINT FOR VIOLATION OF</u>

Title 8, U.S.C., Section 1325(a)(1)
Illegal Entry (Misdemeanor)

The undersigned complainant being duly sworn states:

On or about September 9, 2026, within the Southern District of California, defendants Octavio ABAD-Sanchez (1), Arturo ADAILE-Sanchez (2), Alicia BASURTO-Basurto (3), Jesus Antonio IGNACIO-Hernandez (4), Alpaslan KARADEMIR (5), Josue

LOPEZ-Miguel (6), Olga Lidia MIJANGOS-Perez (7), Rocelia MONTIEL-Marin (8), Sandra MORALES-Escobar (9), Rogelio AGUILAR-Aguilar (10), Arturo CRUZ-Fructuoso (11), Jairo Rogelio HERNANDEZ-Cervantes (12), Federico SANTOS-Gonzalez (13), Jose Francisco NAJERA-Moran (14), and Leobardo Genaro FRUCTUOSO-Hernandez (15), all aliens, knowingly and voluntarily entered the United States of America free from official restraint at a time or place other than as designated by immigration officers, in violation of Title 8, United States Code, Section 1325(a)(1).

And the complainant states this complaint is based on the attached Statement of Facts, which is incorporated herein by reference.

KARLA BUENROSTRO
BORDER PATROL AGENT

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 10th day of September, 2026.

HON. LUPE RODRIGUEZ JR.
U.S. MAGISTRATE JUDGE

UNITED STATES OF AMERICA

v.

Octavio ABAD-Sanchez, et al.

## STATEMENT OF FACTS

On September 9, 2026, Border Patrol Agents-Intelligence (BPA-I) assigned to the El Centro Sector (ELC) Intelligence Targeting Unit (TU) and El Centro Station Disrupt Unit were conducting surveillance operations in El Centro, California. ELC TU and El Centro Station Disrupt Unit personnel operate in plain clothes and use marked and unmarked service vehicles to blend in with the public, conduct surveillance, and investigate known smugglers and smuggling organizations operating in the Imperial Valley. TU personnel were in Zone 3 of the El Centro Station's Area of Responsibility (AOR).

At approximately 5:40 a.m., El Centro Station Remote Video Surveillance System (RVSS) operators and a small Unmanned Aerial System (sUAS) operator observed a white Ford F150 utility truck traveling southbound on Coyote 2 Road toward the United States/Mexico International Boundary Fence (IBF). RVSS and sUAS operators observed the Ford F150 arrive at the IBF and begin traveling eastbound along the IBF toward an area known as Monument 228. This area is approximately 20 miles west of the Calexico West Port of Entry.

The sUAS operator maintained constant visual observation of the Ford F150 as it moved around the area. At that time, the sUAS operator observed an individual south of the IBF momentarily run north toward the fence and then return south. The sUAS operator then observed the individual hide behind a bush. The sUAS operator maintained constant visual observation of the area and the Ford F150.

At approximately 8:10 a.m., the sUAS operator observed a group of individuals opening the floodgates in an area known as Kilo 1, located on the IBF. The sUAS operator then observed the group of individuals board the Ford F150. The group of individuals entered the Ford F150 through the front and rear passenger seats and also entered the utility boxes in the back of the Ford F150. The sUAS operator relayed these observations to Agents in the

field and maintained constant visual observation as the Ford F150 traveled westbound along the IBF. The Ford F150 then began traveling northbound, entered Highway 98, and traveled westbound. BPA-Is and an Air and Marine Operations helicopter, Troy, maintained surveillance of the Ford F150. Troy observed the Ford F150 turn north onto Palo Verde Road, stop near a tree line and then several individuals got out of the vehicle. BPA K. Chavez, BPA E. Reyes Leon, and Supervisory Border Patrol Agent (SBPA) G. Cigarroa arrived on scene and apprehended several individuals approximately six miles north of the IBF. BPA Chavez placed Jesus Antonio IGNACIO-Hernandez, Alpaslan KARADEMIR, and Jose Francisco NAJERA-Moran under arrest after they admitted they did not possess immigration documents that would allow them to enter, remain, or work in the United States legally. BPA Reyes Leon placed Federico SANTOS-Gonzalez under arrest after he admitted he did not possess immigration documents that would allow him to enter, remain, or work in the United States legally. SBPA Cigarroa placed Arturo ADAILE-Sanchez, Rogelio AGUILAR-Aguilar, Arturo CRUZ-Fructuoso, and Jairo Rogelio HERNANDEZ-Cervantes under arrest after they admitted they did not possess immigration documents that would allow them to enter, remain, or work in the United States legally. All defendants were transported to the El Centro Border Patrol Station for further processing.

Thereafter, Troy observed the Ford F150 continue southbound toward Highway 98 and then eastbound. A Border Patrol Agent (BPA) driving a marked Border Patrol service vehicle got behind the Ford F150 to conduct a vehicle stop. The BPA activated the lights and siren but the driver of the Ford F150 failed to yield. The Ford F150 continued traveling eastbound on Highway 98 and turned south onto Coyote 2 Road toward the IBF. The BPA maintained visual observation of the Ford F150 as it arrived at the IBF and traveled westbound toward an area known as Mountain Crossing. The BPA then observed the Ford F150 come to a complete stop and the driver and a group of individuals got out of the Ford F150. The driver absconded back into Mexico as multiple BPAs responded to the scene.

BPA Lopez apprehended Octavio ABAD-Sanchez, Alicia BASURTO-Basurto, Josue LOPEZ-Miguel, Olga Lidia MIJANGOS-Perez, Rocelia MONTIEL-Marin, and Sandra

MORALES-Escobar at the base of the IBF and placed them under arrest after they admitted they did not possess immigration documents that would allow them to enter, remain, or work in the United States legally. BPA Lopez Jr. apprehended Leobardo Genaro FRUCTUOSO-Hernandez at the base of the IBF and placed him under arrest after he admitted he did not possess immigration documents that would allow him to enter, remain, or work in the United States legally.

At the El Centro Station, ABAD's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed ABAD is a citizen of Mexico who did not possess immigration documents that would allow him to enter or remain in the United States legally. Further checks revealed no evidence that ABAD had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, ADAILE's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed ADAILE had not been issued immigration documents allowing him to enter the United States. During a post-Miranda interview, ADAILE stated he is a citizen of Mexico without immigration documents to be in the United States legally. ADAILE stated he intended to enter the United States illegally between Tecate and Mexicali by climbing over the border fence. ADAILE stated his destination was Los Angeles, California. ADAILE stated he was not inspected by immigration officers at a Port of Entry. ADAILE stated he was in the United States for about one hour before being arrested by Border Patrol. ADAILE stated he was arrested about five miles north of the border. Further checks revealed no evidence that ADAILE had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, BASURTO's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed BASURTO had not been issued immigration documents allowing her to enter the United States. During a post-Miranda statement, BASURTO stated she is a citizen of Mexico without immigration documents to

be in the United States legally. BASURTO stated she intended to enter the United States illegally through Mexicali on foot. BASURTO stated she did not intend to enter the United States through a port of entry. BASURTO stated she was in the United States for about 10 minutes before being arrested by Border Patrol. Further checks revealed no evidence that BASURTO had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, IGNACIO's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed IGNACIO had not been issued immigration documents allowing him to enter the United States. During a post-Miranda interview, IGNACIO stated he is a citizen of Mexico without immigration documents to be in the United States legally. IGNACIO stated he intended to enter the United States illegally. IGNACIO stated he did not intend to enter the United States through a Port of Entry. Further checks revealed no evidence that IGNACIO had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, KARADEMIR's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed that KARADEMIR had not been issued immigration documents allowing him to enter the United States. During a post-Miranda statement, KARADEMIR stated he is a citizen of Turkey without immigration documents to be in the United States legally. KARADEMIR stated his destination was Los Angeles, California. KARADEMIR stated he intended to enter the United States illegally and did not intend to enter the United States through a port of entry. Further checks revealed no evidence that KARADEMIR had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, LOPEZ's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed that LOPEZ had not been issued immigration documents allowing him to enter the United States. Further checks

revealed no evidence that LOPEZ had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, MIJANGOS' fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed that MIJANGOS had not been issued immigration documents allowing her to enter the United States. During a post-Miranda interview, MIJANGOS stated she is a citizen of Mexico without immigration documents to be in the United States legally. MIJANGOS stated she was about five minutes away from the border when she was arrested by Border Patrol. MIJANGOS stated she entered the United States illegally for her kids. MIJANGOS stated her destination was Las Vegas. Further checks revealed no evidence that MIJANGOS had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, MONTIEL's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed MONTIEL had not been issued immigration documents allowing her to enter the United States. During a post-Miranda interview, MONTIEL stated she is a citizen of Mexico without immigration documents to be in the United States legally. MONTIEL stated she entered the United States illegally near the Mexicali desert. MONTIEL stated her destination was Los Angeles, California. Further checks revealed no evidence that MONTIEL had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, MORALES' fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed MORALES had not been issued immigration documents allowing her to enter the United States. During a post-Miranda statement, MORALES stated she is a citizen of Mexico without immigration documents to be in the United States legally. MORALES stated she intended to enter the US illegally through the desert. MORALES stated she was not inspected by immigration officers at a Port

of Entry. MORALES stated she was in the US for about five minutes before being arrested by Border Patrol. Further checks revealed no evidence that MORALES had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, AGUILAR's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed AGUILAR had not been issued immigration documents allowing him to enter the United States. Further checks revealed no evidence that AGUILAR had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, CRUZ's fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed CRUZ had not been issued immigration documents allowing him to enter the United States. During a post-Miranda interview, CRUZ stated he is a citizen of Mexico without immigration documents to be in the United States legally. CRUZ stated he intended to enter the U.S. illegally. CRUZ stated he was not inspected by immigration officers at a Port of Entry. CRUZ stated he was in the US for about five minutes before being arrested by Border Patrol. Further checks revealed no evidence that CRUZ had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, HERNANDEZ's fingerprints and biometric data were captured using Department of Homeland Security systems which confirmed HERNANDEZ had not been issued immigration documents allowing him to enter the United States. Further checks revealed no evidence that HERNANDEZ had applied for, sought, or received authorization from the United States Attorney General or the Secretary of Homeland Security to lawfully enter the United States.

At the El Centro Station, SANTOS' fingerprints and biometric data were captured using Department of Homeland Security systems, which confirmed SANTOS had not been issued immigration documents allowing him to enter the United States. Further checks